26969. COLEMAN-MEADOWS-PATE DRUG CO. *v.* WOOD.

DECIDED OCTOBER 1, 1938. REHEARING DENIED NOVEMBER 3, 1938.

*Wade H. Watson,* for plaintiff.
*Highsmith & Highsmith,* for defendant.

FELTON, J. Coleman-Meadows-Pate Drug Company foreclosed a mortgage on the stock of goods of L. L. Dent, and brought a money-rule against the sheriff for the funds left in his hands after the sale under the mortgage fi. fa. Wood, the landlord of Dent, had a distress warrant issued and placed in the hands of the sheriff, and intervened in the money-rule, claiming a part of the money in the hands of the sheriff. The sole issue that went to the jury was whether or not the notes secured by the mortgage had been paid by Dent. The evidence disclosed that Dent gave the notes and mortgage in question on April 1, 1930, there being six notes of $50 each, due at the rate of $50 on the first day of each month for six months, and one note for $926.50 due seven months after date. The mortgage fi. fa. was issued on May 11, 1936. Between the time of the giving of the mortgage and the foreclosure thereof Dent had continued to buy goods on open account from the drug company, and made payments to them weekly, said payments ranging in amounts from $25 to $125. The total amount paid to the company during the six-year period was between $25,000 and $30,000, receipts for which money were held by Dent, with the exception of the receipts for the first year. The intervenor relied upon the testimony of Dent, that the trade had been made with the agent of the company, and that at the time the trade was made the agent agreed that the payments made by Dent should be credited to the open account, and that when one of the notes became due the payments should be credited on the notes as they became due. Dent

never told the company but twice to credit any amount of money on the notes, and testified that to the best of his knowledge all the money that he instructed be credited on the notes was so credited. A large majority of the payments were made in cash to the agent of the company, with no instruction as to how they should be credited. The number of payments for which receipts were held by Dent exceeded two hundred. It does not appear from the evidence that there was any defense by Dent to the foreclosure of the mortgage, or that there was any dispute on his part that the amount claimed to be due on the mortgage was still due. While his testimony sets up the agreement between him and the agent of the company, nowhere in the testimony does it appear that the company was trying to collect something that he did not owe.

The sole question to be decided here is whether the evidence authorized a verdict to the effect that the notes secured by the mortgage had been paid, and in favor of the lien of the intervenor. We think that not only did the evidence not authorize a verdict for the intervenor, but that on the other hand the evidence demanded a verdict that the mortgage had not been paid, and against the intervenor. Our view of this matter is that even if the agreement made between the agent and Dent was binding on the company, a new contract was put into effect by the conduct of the parties, such conduct being the acquiescence by Dent in the crediting of the payments by the company as they saw fit over a period of years. This conduct would be binding on Dent; and in the absence of fraud or collusion, we do not think that a third party can come in and complain as to how the payments were credited. Dent testified: "So far as I know, the company has given me credit on the notes for all I sent them directing to be applied on the notes. . . I owed them besides the notes. . . I was buying merchandise from them every week, and sometimes twice a week. . . I gave them everything I made, to keep them satisfied. . . I cut the indebtedness more than four hundred dollars last year. . . I tried as hard as I could, but I still owed them over six hundred dollars on the open account. There never was any question about that. . . They gave me several months. . . I had always kept my account paid up on a discount basis. . . My account was not running up. I was keeping up with it. . . I think I would be safe in saying I paid them around $30,000." It is our

622

opinion that the money paid by Dent was paid to keep the open account current; and if it were not his intention to have the payments so credited, the application of the payments to the open account was ratified by the conduct of Dent and the failure to contest the mortgage foreclosure, and a third party may not now object. The court erred in overruling the motion for new trial.

*Judgment reversed. Stephens, P. J., and Sutton, J., concur.*